# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

**JEANEAN ALSAYYED**                                                                         **PLAINTIFF**

**V.**                       **CASE NO. 3:16-CV-00173-BD**

**NANCY A. BERRYHILL, Acting Commissioner,**
**Social Security Administration**                                                  **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeanean Alsayyed has appealed the final decision of the Commissioner of the Social Security Administration denying her claims for disability benefits and supplemental security income. Both parties have submitted appeal briefs, and the case is ready for decision.[1]

**Background**

Ms. Alsayyed alleges that she became limited in her ability to work due to bipolar disorder, depression, anxiety, diabetes, cholesterol issues, scoliosis, and post-traumatic stress disorder. (SSA record at 257, 272, 356) After conducting a hearing, the Administrative Law Judge[2] ("ALJ") concluded that Ms. Alsayyed had not been under a disability within the meaning of the Social Security Act ("the Act") at any time from June 16, 2013, alleged onset date, through April 28, 2015, the date of the decision. (*Id*. at 190, 197) The Appeals Council denied the request for a review of the ALJ's decision, making

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge. (Docket #Ms. Alsayyed)

[2] The Honorable Mark Ferguson.

the decision the final decision of the Commissioner. (*Id*. at 1-6) Ms. Alsayyed then filed her complaint initiating this appeal. (Docket entry #2)

Ms. Alsayyed was 42 years old at the time of the hearing and lived with her twenty-year-old niece and five-year-old daughter. (SSA record at 207-08) Ms. Alsayyed had an eighth grade education and past work as head teller, cashier, and office manager. (*Id*. at 220)

**The ALJ's Decision**

The ALJ found that Ms. Alsayyed had not engaged in substantial gainful activity since June 16, 2013, her onset date, and that her diabetes mellitus, degenerative disc disease, status-post bilateral knee scope, depressive disorder, and post-traumatic stress disorder ("PTSD") were severe impairments; but, she did not have an impairment or combination of impairments that met a listing. (*Id*. at 190) He further found that Ms. Alsayyed's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (*Id*. at 193-97)

Based on his findings, the ALJ concluded that, during the relevant time period, Ms. Alsayyed retained the residual functional capacity ("RFC") for light work except she could only occasionally stoop, crouch, crawl, and kneel; could perform work where interpersonal contact was only incidental to the work performed, the complexity of tasks could be learned by demonstration or repetition within 30 days, few variable, and little judgment, and the supervision required was simple, direct, and concrete. (*Id*. at 192)

**Ms. Alsayyed's Allegations**

Ms. Alsayyed argues that the ALJ erred in finding that she was not entirely credible and in finding she could perform a limited range of light, unskilled work. (#13)

**Standard on Review**

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Papesh v. Colvin*, 786 F.3d 1126, 1131(8th Cir. 2015); see also 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

**Credibility**

Ms. Alsayyed contends the ALJ erred in assessing her credibility. At the hearing, Ms. Alsayyed testified that she could not work due to depression and anxiety. (SSA record at 212, 218-19) She testified that she got "confused a lot" and had crying spells. (*Id*. at 217) She also testified that she was in pain "all the time" in her lower back and legs, and that the medicine she took did not relieve the pain. (*Id*. at 213) She testified that standing and sitting aggravated the pain. (*Id*. at 216-17) Ms. Alsayyed stated that when she considered going back to her last job, she "would start having an anxiety attack." (*Id*. at 219) The ALJ found Ms. Alsayyed's testimony to be not entirely credible. (*Id*. at 193-196)

The court defers to the ALJ's credibility determination if it is supported by good reasons and substantial evidence. *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014) (citations omitted). An ALJ weighs the credibility of a claimant's subjective complaints of pain by considering multiple factors, including daily activities, and may discredit complaints if they are inconsistent with the evidence as a whole. *Id*. Impairments controllable by treatment or medication are not disabling. *Id*. Thus, the question before the court is whether substantial evidence supports the ALJ's credibility assessment.

Here, the ALJ gave consideration to the required factors when assessing Ms. Alsayyed's credibility. (*Id*. at 193-196) He found that the medical records did not support the level of limitation Ms. Alsayyed alleged.

**Anxiety and Depression.** The medical records establish that Ms. Alsayyed first sought mental health treatment three months after her alleged onset date. She reported difficulty controlling her anger, social withdrawal, difficulty sleeping, and a history of sexual abuse. (*Id*. at 451-58) On examination, she had a sad mood, but exhibited normal judgment and insight, intact memory, and average intelligence. She was diagnosed with major depressive disorder and was assessed a Global Assessment of Functioning ("GAF") score of 48. One month later, Ms. Alsayyed showed good progress toward her goals on medication. (*Id*. at 464-65) She reported that her mood was good, and she had had only two crying spells. (*Id*.)

As Ms. Alsayyed continued with counseling and medication management, she was noted to have normal speech, appropriate attention and concentration; and she denied

4

hallucinations, delusions, and suicidal ideation. (*Id.* at 497-98, 506-07) A treatment note from July, 2014, indicates that she had normal speech, logical flow of thought, a stable and euthymic mood, and appropriate attention. (*Id.* at 562) She reported fewer symptoms. (*Id.*) Later that month, at a visit to establish care with Danna Guntharp, ARPN, Ms. Alsayyed reported that her anxiety, depression, PTSD, bipolar, and obsessive compulsive disorder were controlled with her current regimen. (*Id.* at 625)

Dennis R. Vowell Jr., Psy.D., performed a consultative examination of Ms. Alsayyed on March 10, 2014. Ms. Alsayyed reported having ups and downs in her mood, social withdrawal, crying spells, and frequent feelings of hopelessness and helplessness. She also reported having flashbacks and nightmares of past traumatic events. (*Id.* at 485) Notably, she did not report any major medical problems. (*Id.*) On examination, Ms. Alsayyed had a flat affect but her speech was clear and coherent throughout the evaluation; her thought process was logical and goal-directed; she denied delusions and hallucinations; and there was no overt evidence of responding to internal stimuli. Cognitively, Ms. Alsayyed was fully oriented, was able to recall four digits forward and backward, and performed serial threes with an average rate of speed and no errors. (*Id.* at 486-87)

Dr. Vowell diagnosed PTSD and depressive disorder, not otherwise specified, and assigned a GAF score of 50-60. He found that she could complete basic activities of daily living and household chores; communicate in a socially appropriate manner, sustain a reasonable degree of cognitive efficiency, and respond to questions and tasks without

remarkable slowing or distractibility, and could perform tasks within a basically acceptable time-frame. (*Id*. at 488)

State agency consultants reviewed Ms. Alsayyed's records and found her capable of unskilled work. (*Id*. at 225-236, 238-249)  As for her daily activities, Ms. Alsayyed reported being able to prepare meals, shop, get her children ready for school, and drive. (*Id*. at 365-71) She cleaned and did laundry, but did not do yard work. *Id*. She was able to pay bills, count change, and use a check book. *Id*. She attended church regularly and reported that she had never been fired due to problems getting along with others. *Id*.

The ALJ's conclusion that Ms. Alsayyed was not entirely credible and was capable of performing unskilled work is supported by good reasons and substantial evidence. *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014).

**Knee and Back Pain.** Ms. Alsayyed also argues that her physical impairments limited her from performing light work with only occasional stooping, crouching, crawling and kneeling. The ALJ carefully considered Ms. Alsayyed's treatment for knee and back pain.  Ms. Alsayyed did not complain of back pain until April, 2014, ten months after her alleged onset date, when she had a dilation and extraction for an intrauterine pregnancy. (*Id*. at 531,539-40, 581)

The ALJ noted Ms. Alsayyed's use of narcotic pain medication and epidural steroid injections during the relevant time period.  He also observed that treating sources had sometimes noted decreased range-of-motion, stiff posture and antalgic gait. (*Id.* at 195-96, 588) But he also noted treatment records indicating normal range-of-motion in

extremities, negative straight leg testing and no sensory or motor deficits. (*Id*. at 195-96, 588-89)

Travis D. Richardson, D.O., performed bilateral knee arthroscopies on Ms. Alsayyed in December, 2014. At a follow-up appointment in January, 2015, Dr. Richardson noted that Ms. Alsayyed might need further surgery on her knees at some point in the future, but she reported no pain following surgery. Three months after surgery, Dr. Richardson noted Ms. Alsayyed's knees had stabilized and "her condition seems to be improved." (*Id*. at 713, 719, 723, 728)

Dr. Richardson treated Ms. Alsayyed with narcotic pain medication and trigger-point injections for back pain. (*Id*. at 702-730) In March, 2015, Dr. Richardson indicated Ms. Alsayyed should proceed with surgical fusion and decompression at L5-S1, because her knees had stabilized and improved. (*Id*. at 713) There are no records, however, indicating that Ms. Alsayyed had back surgery during the relevant time. Instead, Dr. Richardson continued to treat Ms. Alsayyed with injections and pain medication. On examination, her range of motion was limited and straight leg test was positive, but she showed no overt evidence of instability, instead, only mild weakness, normal motor and sensory function, and only "some disturbance" in her gait. (*Id*. at 709)

In April, 2015, Ms. Alsayyed reported to the emergency room with abdominal pain. On examination, she was not in acute distress, and exhibited normal range of motion in her extremities, no edema, no motor deficit, and no sensory deficit. (*Id*. at 780-81) In May, 2015, Ms. Alsayyed began treatment with a new primary care physician and

requested a referral to a pain specialist. (*Id.* at 791) In examinations in May, 2015 and January, 2016, Ms. Alsayyed was noted to have normal gait and motor function; no clubbing, cyanosis with normal range of motion and sensation in her extremities; and normal range of motion in her spine. (*Id.* at 61, 789, 792)

Substantial evidence supports the ALJ's credibility determination. In spite of treatment for physical impairments, Ms. Alsayyed testified that it was her mental impairments that kept her from working. (*Id.* at 212) Moreover, Ms. Alsayyed's claimed physical limitations were inconsistent with the medical records and her activities of daily living.

**Residual Functional Capacity**

Ms. Alsayyed complains that her impairments prevented her from performing a limited range of light work. As noted, the ALJ's conclusion that Ms. Alsayyed could perform light, unskilled work with only occasional stooping, crouching, crawling and kneeling is supported by substantial evidence.

Ms. Alsayyed points to GAF scores of 48 assigned to her by Samuel Frangenberg, a Licensed Associate Counselor at Alternative Opportunities, Inc., as evidence that her mental impairments were severe. (*Id.* at 451-75) However, only two of these scores were assigned by an acceptable medical source as defined in the Social Security Regulations. 20 C.F.R. §§ 404.1513, 404.1527; *Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015) (ALJ properly found licensed professional counselor was not an "acceptable medical source" under the regulations); *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005)

8

(licensed social worker not deemed an acceptable medical source). Ms. Alsayyed's GAF score of 48, assigned by Dr. Thomas Zurkowski, M.D., must be considered together with the score assigned by Dr. Vowell, who assessed Ms. Assayed at 50–60 on the GAF scale after examining and testing her during a consultative examination on March 10, 2014. (*Id*. at 463, 474, 485-89)

In any event, GAF scores do not directly correlate to the severity requirements of mental disorders listings. *Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010). They should be considered, of course, along with other evidence in determining a claimant's residual functional capacity. *Pate-Fires v. Astrue*, 564 F.3d 935, 944-45 (8th Cir. 2009). Given both the medical and non-medical evidence, which weighs in favor of denying benefits, the GAF scores alone do not dictate a different residual functional capacity assessment.

Ms. Alsayyed also complains that the ALJ should have sent her for a consultative examination to evaluate her physical impairments or should have re-contacted her medical sources. The applicable regulations and case law do not require an ALJ to obtain a residual functional capacity assessment from a treating source to complete the record. *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) ("[T]he ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record.") (quoting *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994)); *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011) (the ALJ is required to contact a treating or consulting physician for additional information only if the medical records presented do not provide sufficient evidence to make a decision on disability).

9

The ALJ's residual functional capacity determination is supported by substantial evidence. He properly considered all of the medical and other relevant evidence of record in making his residual functional capacity determination, including Ms. Alsayyed's description of her limitations, her medical records (including the observations of her treating and examining physicians and others), and the opinions of state agency medical consultants. (*Id*. at 188-197) The ALJ's residual functional capacity assessment is supported by medical evidence[3] that is sufficiently clear to allow for an understanding of how Ms. Alsayyed's limitations functioned in a work environment.

Therefore, substantial evidence supports the residual functional capacity determination. See *Harvey v. Colvin*, 839 F.3d 714, 717 (8th Cir. 2016) (ALJ's residual functional capacity analysis was not flawed where the ALJ properly weighed and considered the extensive medical evidence in the record in making the residual functional capacity determination); *Cox v. Astrue*, 495 F.3d 614, 620 n.6 (8th Cir. 2007) (there was substantial evidence to support the RFC determination because it was supported by medical evidence that sufficiently allowed for an understanding of how Plaintiff's limitations functioned in a work environment).

**Conclusion**

Substantial evidence supports the ALJ's decision denying Ms. Alsayyed's application for disability insurance benefits. The ALJ made no legal error. For these

---

[3] The record includes 555 pages of medical records.

reasons, Ms. Alsayyed's request for relief (#2) is DENIED, and the decision denying the application for benefits is AFFIRMED.

DATED this 2nd day of June, 2017.

_____
UNITED STATES MAGISTRATE JUDGE